IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | CRIMINAL NO. CCB-17-519 |
| | * | |
| TOYOSI ALATISHE, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

### SENTENCING MEMORANDUM ON BEHALF OF TOYOSI ALATISHE

On October 31, 2017, a grand jury in the District of Maryland returned an indictment against defendant Toyosi Alatishe. On February 27, 2018, a grand jury returned the operative Second Superseding Indictment ("SSI"). Count One of the SSI charged Mr. Alatishe under 18 U.S.C. § 1029(b)(2) with conspiracy to "knowingly and with the intent to defraud, use and traffic in one or more unauthorized access devices during a one-year period and obtain more than $1,000, in and affecting interstate commerce, in violation of 18 U.S.C. § 1029(a)(2)." Counts Two through Four charged substantive violations of 18 U.S.C. § 1029(a)(2). Count Five charged Mr. Alatishe with possessing 15 or more unauthorized access devices — knowingly, with intent to defraud, and in and affecting interstate commerce — in violation of 18 U.S.C. § 1029(a)(3). Count Six charged the defendant with committing aggravated identity theft in January 2015, in violation of 18 U.S.C. § 1028A, based on the predicate offenses charged in Counts One through Five. The SSI then charged a separate fraud scheme that was executed through six counts of wire fraud that spanned the period from March 1, 2013 through April 3, 2013 (Counts Seven through Twelve), in violation of 18 U.S.C. § 1343. Counts Thirteen through Sixteen charged additional violations of 18 U.S.C. § 1028A, predicated on wire fraud counts.

After a six-day trial in January 2019, a jury convicted Mr. Alatishe on all charges. On May 3, 2019, the Court sentenced Mr. Alatishe to concurrent terms of imprisonment of 60 months (Count One) and 108 months (Counts Two through Five and Seven through Twelve), additional terms of imprisonment of 24 months on Counts Six and Thirteen through Sixteen, to run consecutive to Counts One through Five and Seven through Twelve and concurrent to each other, followed by concurrent terms of supervised release of three years (Counts One through Five, Seven through Twelve) and one year (Counts Six and Thirteen through Sixteen), restitution of $2,287,959.67, and a $1,600 special assessment.

With regard to special conditions of supervised release, the Court stated in part that "[s]pecial conditions of supervised release are going to include any mental health counseling or treatment the probation office recommends — I believe that may be an issue for Mr. Alatishe…." When it issued its amended judgment on June 5, 2019, the Court added new and more stringent language: "You must take all mental health medications that are prescribed by your treating physician." The sentencing hearing and judgment predated a series of Fourth Circuit cases that require district courts to pronounce orally special conditions of supervised release. *United States v. Rogers,* 961 F.3d 291, 296 (4th Cir. 220); *United States v. Singletary,* 984 F.3d 341, 345 (4th Cir. 2021).

The Fourth Circuit affirmed Mr. Alatishe's convictions but, as required by *Rogers* and *Singletary*, vacated Mr. Alatishe's sentence and remanded for resentencing. *United States v. Alatishe,* No. 19-4347, 2022 WL 807368 (4th Cir. Mar. 16, 2022) (per curiam). Because the Fourth Circuit entered a general remand for resentencing that did not specify any limitations, this Court conducts a *de novo* resentencing. *United States v. Fields*, 552 F.3d 401, 404 (4th Cir. 2009) (holding that a remand order "essentially mandated that the court conduct a de

novo resentencing" since the Fourth Circuit "did not limit [the] remand order to a specific issue"); *United States v. Alston*, 722 F.3d 603, 607 (4th Cir. 2013) (relying on *Pepper v. United States*, 562 U.S. 476, 506 (2011), to conclude that on remand for *de novo* resentencing, the district court was not bound by prior rulings and explaining that "[p]rohibiting the district court from taking a holistic approach to [the defendant's] resentencing would not only undermine the district court's original sentencing intent, it would prevent the district court from making the very individualized assessment of [the defendant] required by § 3553(a)").

Mr. Alatishe requests that the Court impose a less severe sentence than it imposed three years ago. This memorandum explains why.

### I. THE COURT SHOULD NOT IMPOSE A SPECIAL CONDITION OF SUPERVISED RELEASE REQUIRING MR. ALATISHE TO TAKE MENTAL HEALTH MEDICATIONS

Mr. Alatishe submits that a special condition of supervised release requiring him to take "mental health medications" is unnecessary and would violate his right to due process. The Supreme Court has held that a defendant has a constitutionally protected liberty interest in avoiding the involuntary administration of certain categories of drugs. *Sell v. United States*, 539 U.S. 166, 178-79 (2003) (citing *Riggins v. Nevada*, 504 U.S. 127, 134, 135 (1992)). Only an "essential" or "overriding" state interest can overcome this liberty interest. *Id*. The Fourth Circuit has held that "[a]mong the governmental interests that in a given case may be sufficiently important to support an order for involuntary medication are the need to protect the individual and others from the individual's potentially dangerous behavior," *United States v. Holman*, 532 F.3d 284, 288 (4th Cir. 2008) (citing *Riggins* and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990)). If it imposes such conditions, the Court must provide an explanation. *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009).

The record in this case does not demonstrate that compulsory medication is necessary to protect Mr. Alatishe or others from dangerous behavior. Mr. Alatishe is a non-violent offender with no criminal history. The presentence report set forth information about one brief, prior episode of depression, including what seems to have been a half-hearted suicide attempt triggered by the charges in this case. At the previous sentencing hearing, this Court did not discuss that portion of the PSR and did not cite the defendant's depressive episode as the basis for compulsory medication. The remaining mandatory and special conditions of supervised release were more than sufficient to prevent him from committing any recidivist financial crimes during his period of supervised release, and a general requirement of mental health treatment is more than sufficient to protect the defendant and community from any continuing mental illness. In sum, no "essential" or "overriding" state interest exists to overcome Mr. Alatishe's liberty interest and compel him to ingest "mental health medications."

## II. THE COURT SHOULD IMPOSE A SHORTER PERIOD OF INCARCERATION

To determine the appropriate sentence under 18 U.S.C. § 3553(a) this Court must consider (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a). Mr. Alatishe directs the Court to three subsections in particular: § 3553(a)(1), § 3553(a)(4), and § 3553(a)(6).

> **A.  Applying 18 U.S.C. § 3553(a)(1), the Court Should Take Into Account Mr. Alatishe's Post-Sentencing Rehabilitation and His Family Circumstances**

With regard to the defendant's history and characteristics, at a resentencing hearing "the court can take into account a defendant's conduct after his initial sentencing." *United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021). While confined at FCI Loretto in Pennsylvania, Mr. Alatishe has complied with his assignments. He worked in food service in the dining room. He took and completed seven educational courses between October 2019 and June 2021. Copies of his most recent Individuals Needs Plan and Certificates of Completion for various courses are attached as **Exhibits 1** and **2**.

Mr. Alatishe continues to suffer from Type 2 diabetes and high cholesterol. He takes Metformin 500 mg and Atorvastatin 20 mg daily. Without repeating information that has been set forth in countless compassionate release motions over the past two-plus years, the Court can take into account the threat that COVID-19 poses to individuals with diabetes and high cholesterol. Fortunately, Mr. Alatishe survived testing positive for COVID-19 in December 2021.

In this regard, the Court should also take into account two additional aspects of Mr. Alatishe's incarceration. First, like many other inmates, he was subjected to repeated lockdowns related to the COVID-19 pandemic, which resulted in restrictions in movement, activities, recreation, diet, and visits from family and friends. Quite simply, "a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison." *United States v. Mcrae*, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021). As Chief Judge Gregory of the Fourth Circuit stated earlier in the pandemic:

5

> There is good reason to believe that, in some cases, a sentence that was "sufficient but not greater than necessary" before the coronavirus pandemic may no longer meet that criteria. A day in prison under the current conditions is a qualitatively different type of punishment than one day in prison used to be. In these times, drastically different. Some facilities house inmates who now serve their sentences knowing that they are not equipped to guard against a virus that may result in serious illness or death. Other facilities keep COVID-19 at bay by placing inmates in solitary confinement, ending prison programs, restricting visitation, and limiting access to nonessential medical care…. These conditions, not contemplated by the original sentencing court, undoubtedly increase a prison sentence's punitive effect.

*United States v. Kibble,* 992 F.3d 326, 335 (4th Cir. 2021) (Gregory, C.J., concurring). Similarly, in *United States v. Mel,* 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020), Judge Chuang granted a reduction in sentence equivalent to defendant's time in quarantine because "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the court anticipated at the time of sentencing"); *see United States v, Rodriguez,* 492 F.Supp.3d 306, 311 (S.D.N.Y. 2020) (quoting *Mel*).

Even as the initial phases of the pandemic abated and inmates were vaccinated, courts have continued to reduce sentences because of time spent in quarantine. Summarizing the case law on this subject, *United States v. Dones,* 2021 WL 6063238 (D. Conn. Dec. 22, 2021), stated that "[c]ourts have granted motions for compassionate release based upon the theory that the COVID-19 pandemic has created disproportionately harsh sentences and limited the rehabilitative resources available to incarcerated people." 2021 WL 6063238, at *3; *see also United States v. Sherrod*, 2021 WL 3473236, at *3 (E.D. Mich. Aug. 6, 2021) (noting that the placement of an incarcerated person in quarantine for administrative convenience was an "extreme" and "disturbing" measure). More recently, other defendants have received sentence reductions because of the hardships imposed by COVID-related lockdowns. *See United States v. Smith,* 2022 WL 1063170, at *11 (S.D.N.Y. Apr. 8, 2022) (noting severity of conditions of

6

confinement and granting six-month reduction in sentence); *United States v. Lora,* 2022 WL 1055749, at *6 (S.D.N.Y. Apr. 8, 2022) (same; ten-month reduction in sentence); *United States v. Lugo,* 2022 WL 732153, at *10 n.9 (E.D.N.Y. Mar. 11, 2022) (reducing murder sentence from life imprisonment to 25 years and noting severity of time spent in lockdown conditions). Mr. Alatishe should receive the same compassion.

In evaluating Mr. Alatishe's personal characteristics, the Court should also look carefully at the letter submitted by his 25-year-old son, Damilola Alatishe. *See* **Exhibit 3**. The defendant's son is a college graduate, works in information technology for the Food and Drug Administration, and hopes to earn a Ph.D degree. He writes:

> … My father instilled in me at a young age the importance of hard work, education and staying focused. As a child all the way to my adult years, I would see my father work as hard as he could to support and maintain the family. My father taught me that vision and hard work do make dreams come true. I honestly attribute my success and status in life right now to my father and the model he provided me. If I did not have my father I doubt I would have made it as far as I have today.
>
> My father is a man who has gone through many obstacles and hardships in life that in my lifetime I've only seen a small percentage. Growing up with a parent who was an immigrant from Nigeria was a very unique and eye opening experience looking back as an adult now. I remember growing up with my father not able to understand social norms and concepts that you or I can easily grasp. This was something I accepted and didn't degrade my father for because he literally developed and came from a different world so to speak. We did not grow up rich or well off but my father tried his best and I saw it every day my brother and I had food, clothes, roof over our heads, and stability. He even accepted the challenge to raise my younger brother and I when my mother left us and it was incredibly difficult for him but he did his best to provide for us. I knew my father was hurting but till this day, he continues to encourage my brother and I to strive and work hard for a better future so we can be there for him like he was for us and give back to him for all of his sacrifices.[1]

---

[1] Mr. Alatishe also requests that the Court again consider the personal information, including an earlier letter from his sons that was submitted in the sentencing memorandum submitted by trial counsel.

### B. With Regard to § 3553(a)(4), the Court Should Find a Lower Loss Amount and Apply a Lower Advisory Guidelines Range

While Mr. Alatishe previously did not challenge the district court's loss determinations, he now requests that the Court limit those calculations to the amounts consistent with those charged in the SSI.

As summarized above, the SSI charged Mr. Alatishe with an access device fraud conspiracy (Count One, related substantive Counts Two through Five) and a separate wire fraud scheme (Counts Seven through Twelve). The access device fraud conspiracy alleged in pertinent part in Count One, ¶ 19 that "[i]t was further part of the conspiracy and access device fraud that **ALATISHE** and his co-conspirators used the debit cards to obtain cash and other property valued at more than $500,000." The wire fraud scheme alleged in pertinent part in Count Seven, ¶ 15 that "[i]t was further part of the scheme to defraud that **ALATISHE** caused the IRS to suffer a loss of more than $30,000, and attempted to obtain additional refunds, which the IRS refused to process."

As other courts of appeals and district courts in this Circuit have stated, "'[t]o determine the scope of the alleged conspiratorial agreement, the court is bound by the language of the indictment,'… '[t]he indictment establishes the outer limits of the scope of the conspiracy.... In other words, the indictment establishes a ceiling not a floor.'" *United States v. Leonard,* 777 F.Supp.2d 1025, 1031 (W.D. Va. 2011) (quoting *United States v. Hitt,* 249 F.3d 1010, 1015 (D.C. Cir. 2001), and *United States v. Kang,* 715 F.Supp.2d 657, 673 (D.S.C. 2010)). "Importantly, the government is bound by the phrasing it uses in the indictment, even if it chooses to use more specific language than necessary." *United States v. Pinson,* 860 F.3d 152, 171 (4th Cir. 2017).

8

At various stages of the prior proceedings, including a Rule 11 proceeding at which Mr. Alatishe was unable to enter a knowing and voluntary guilty plea to less severe charges than were ultimately contained in the SSI, Mr. Alatishe exhibited understandable confusion about the pros and cons of pleading guilty versus going to trial. When he elected to proceed to trial — a trial at which he did not deny the essential facts about his conduct — Mr. Alatishe did so with a reasonable expectation that the government would calculate losses of more than $530,000, plus the intended loss associated with the unprocessed returns. The SSI did not explicitly warn him that the government would seek loss calculations of more than $2 million. The phrase "more than $530,000" does not contemplate losses of quadruple that amount. *Cf. Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1311 (Fed. Cir. 2003) (in patent context, "words of approximation" permit "some degree of deviation" from exact language used in document).

Mr. Alatishe recognizes that the jury returned a general verdict and that under the sentencing system enacted by Congress in 1984, the Court calculates loss using a preponderance of the evidence standard. But, as a matter of equity, the Court should not impose a sentence based on losses that vastly exceed the bounds established by the SSI. At sentencing, the government asked the Court to calculate a loss amount of more than $1.5 million but not more than $3.5 million and a restitution amount of $2,287,959.67. The Court calculated the loss amount at more than $1.5 million but less than $3.5 million, resulting in an increase in the offense level of 16 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(I). By contrast, a loss of more than $550,000 but not more than $1,500,000 would have resulted in an increase of 14 levels under § 2B1.1(b)(1)(H), and a loss of more than $250,000 but not more than $550,000 would have resulted in an increase of 12 levels under § 2B1.1(b)(1)(G).

An advisory guidelines range alleging a loss of more than $1.5 million is not appropriate in a case where the charging document alleged only that Mr. Alatishe caused losses of "more than" $530,000. Mr. Alatishe was entitled to rely on the government's reasonable assurances — as set forth in an indictment, no less — about the approximate range of loss that the government associated with his case. Rather than the previous increase in the offense level of 16 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(I), the Court should find a loss of more than $250,000 but not more than $550,000 with an increase of 12 levels under § 2B1.1(b)(1)(G), or in the alternative a loss of than $550,000 but not more than $1,500,000 and impose an increase of 14 levels under § 2B1.1(b)(1)(H).

      **C.**    **With Regard to § 3553(a)(6), the Court Should Impose a Lower Sentence to Avoid Disparities Between Mr. Alatishe's Case and Other Recent Financial Fraud Cases in this Court**

Mr. Alatishe also respectfully asks the Court to consider the factor identified in § 3553(a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records." In particular, the Court asks the Court to consider the disparity between his case and the much less severe, below-guidelines sentences imposed in *United States v. Babatunde Ajibawo, et al.,* Crim. No. CCB-20-0205 (D. Md. filed July 21, 2020).

In those cases, defendant Ajibawo, whom the government identified as the ringleader of the criminal activity, pleaded guilty to bank fraud conspiracy, in violation of 18 U.S.C. § 1349. Despite the fact that his offense level was 27, with a guideline range of 70-87 months if the defendant was in criminal history category I, the Court imposed a below-guidelines sentence of 48 months. ECF 97, 123. A second defendant, Oyehanmi Oworu, was convicted of bank fraud conspiracy, in violation of 18 U.S.C. § 1349, and aggravated identity fraud, in violation of 18 U.S.C. § 1028A. ECF 136. Mr. Oworu stipulated that the loss range was more than $3.5 million

but less than $9.5 million. His offense level on the bank fraud conspiracy count, after acceptance of responsibility, was 26. With a criminal history category of II, the guidelines range was 70-87 months. *See* Transcript of Sentencing Hearing, March 10, 2022 (**Exhibit 4**), at 4. Nevertheless, the government recommended a *total sentence* for Mr. Oworu, including the 24-month mandatory consecutive sentence for the § 1028A count, of 36 months. *Id.* at 6. In making that recommendation, the government stated that "to avoid unwarranted sentencing disparities among defendants with similar records and similar conduct, that a sentence of 36 months would be appropriate." *Id.* The Court agreed that it needed to take into account the sentence it had imposed on Mr. Ajibawo, *id.* at 12, and imposed the sentence recommended by the government, thereby reducing the sentence on Count One from the 70-87 months recommended by the guidelines to just 12 months.

     Mr. Alitishe's case and the case involving Mr. Ajibawo and Mr. Oworu were both serious cases. Both involved financial fraud conspiracy and misappropriation of means of identification. Even taking into account the fact that Mr. Alatishe effectively forfeited a reduction in guidelines range for acceptance of responsibility by exercising his constitutional right to a trial, nothing in the public record demonstrates why Mr. Alatishe must receive a within-guidelines sentence on the fraud counts while the defendants in a similar case received sentences far below the guidelines. Mr. Alatishe therefore requests that the Court vary downward from the advisory sentencing guidelines range in calculating its sentence on the non-§ 1028A counts (Counts One through Five and Seven through Twelve).

## CONCLUSION

The Court previous imposed consecutive sentences of 108 months (on the non-§ 1028A counts) and 24 months (on the § 1028A counts) for a total of 132 months. Mr. Alatishe respectfully requests that the Court reduce the sentence on the non-§ 1028A counts from 108 months to not more than 72 months and impose an aggregate sentence of not more than 96 months.

Respectfully submitted,

/s/ Stuart A. Berman
Stuart A. Berman
Lerch Early & Brewer, Chtd.
7600 Wisconsin Avenue
Suite 700
Bethesda, Maryland 20814
T: (301) 657-0729
F: (301) 347-1538
saberman@lerchearly.com
*Counsel for Toyosi Alatishe*

**CERTIFICATE OF SERVICE**

I certify that on May 19, 2022, I caused this motion and exhibits to be served on counsel through the Court's Electronic Case Filing system and sent a copy through email to:

>Gina Swillo
>Sentencing Guideline Specialist
>250 W. Pratt Street, $400
>Baltimore, MD 21201
>gina_swillo @mdp.uscourts.gov

      /s/ Stuart A. Berman
      Stuart A. Berman

13